UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DEMARIO BROWN,

    Defendant.
_____/

Criminal Action No.
12-CR-20342

HON. MARK A. GOLDSMITH

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

### I. INTRODUCTION

This matter is presently before the Court on Defendant Demario Brown's motion to suppress (Dkt. 18). Defendant is charged with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Defendant seeks to suppress the firearm that is the subject of the indictment. The Government filed a response to the motion (Dkt. 20); Defendant did not file a reply. The Court conducted an evidentiary hearing on December 11, 2012, after which both parties submitted supplemental briefing (Dkts. 22, 23). The Court has thoroughly reviewed this matter and, for the reasons that follow, will deny the motion.

### II. BACKGROUND

On December 28, 2011, Officer Bill Van Buskirk of the Mt. Morris Police Department was patrolling a high crime area in an unmarked police car and observed Defendant with a bulge in his pants pocket, causing that area of his pants to sag. Hr'g Tr. at 7-10, 12-13. Defendant and Van Buskirk made eye contact from a distance, at which time Defendant grabbed the sagging area near his right pocket. Id. at 9. Van Buskirk recognized Defendant because he "had several

contacts with [him] in the past." Id. at 8. Specifically, Van Buskirk testified that he knew that Defendant, in the past: (i) "had quite a few incidences involving loitering," (ii) was "the main suspect" in a school shooting, and (iii) was known to associate with drug dealers. Id. at 9, 25.

Van Buskirk pulled his cruiser from the main street onto a driveway, thereby blocking the sidewalk in front of Plaintiff, exited his cruiser, and identified himself as a police officer. Id. at 11, 37-39. At this point, Defendant "initially," "for a brief second," stopped. Id. at 39. Van Buskirk then ordered Defendant to put his hands on the hood of the cruiser; he did not touch Defendant and made no other statements to him. Id. at 11-12. At this point, Defendant "reach[ed] by his side," "turned," "started to take two steps back," "looked eastbound," then "turned and started to run north through the backyards." Id. at 11. Van Buskirk chased Defendant on foot, tackled him once unsuccessfully, gave chase again, tackled him a second time unsuccessfully, followed Defendant as he hopped a fence, and finally caught up with Defendant and secured him in custody. Id. at 14, 40. Van Buskirk first saw that Defendant had a gun during the foot chase in between the fence-hopping and Defendant's apprehension – after the unsuccessful tackles but before his arrest. Id.

### III. ANALYSIS

Defendant argues that the discovery of the gun was the result of an unconstitutional seizure and that, as a result, the gun must be suppressed. Defendant's specific theory is that he was seized within the meaning of the Fourth Amendment, at the latest, at the time he was ordered to put his hands on the hood of the police cruiser. Defendant contends that, because Van Buskirk did not have reasonable suspicion to seize him at that moment, the seizure was unconstitutional and the ensuing discovery of the gun must be suppressed as the fruit of the allegedly unlawful seizure. See generally Terry v. Ohio, 392 U.S. 1 (1968).

In opposition, the Government argues that, even if Van Buskirk did not have reasonable suspicion to seize Defendant at the time he was ordered to place his hands on the hood of the police cruiser, the gun should not be suppressed because no seizure had occurred at that point and, therefore, Defendant's Fourth Amendment rights were not yet triggered.[1]

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. This protection extends to all seizures, including the brief investigatory stops described by the Supreme Court in Terry. United States v. Johnson, 620 F.3d 685, 690 (6th Cir. 2010).

A person is seized, within the meaning of the Fourth Amendment, when two events occur: First, there must be a "show of authority" or use of "physical force," such that, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Michigan v. Chesternut, 486 U.S. 567 (1988) (citations and internal quotation marks omitted). Second, an individual must yield to the show of authority or physical force. See Brendlin v. California, 551 U.S. 249, 254 (2007) ("[T]here is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned."); California v. Hodari D., 499 U.S. 621, 629 (1991) (police pursuit is not a seizure until the suspect actually stops).

Accordingly, the critical question in this case is: when was Defendant seized? If the police became aware of the firearm before Defendant was seized, then there was no Fourth Amendment violation, and Defendant's motion would have to be denied.

---

[1] The Government also argues that Van Buskirk had reasonable suspicion to seize Defendant at the time Defendant was ordered to put his hands on the hood of the police cruiser, rendering the ensuing discovery of the gun constitutional. The Court does not address this argument because the Court agrees with the Government that Defendant was not seized, within the meaning of the Fourth Amendment, prior to the police discovery of the firearm.

The chronology of material events in this case is as follows: (i) Van Buskirk pulled his car into a side street, approached Defendant, and identified himself as a police officer; (ii) Defendant briefly stopped; (iii) Defendant was ordered to put his hands on the hood of Van Buskirk's cruiser; (iv) Defendant did not comply and bolted on foot; (v) Van Buskirk gave chase; (vi) Defendant was tackled once, escaped and resumed running, was tackled a second time, escaped again and resumed running; (vii) Van Buskirk observed Defendant with a gun while still chasing Defendant; (viii) Van Buskirk apprehended Defendant and secured him in custody. Defendant argues that he was seized as early as point (i), (iii), or (vi) in the above chronology. The Court disagrees.

Defendant was not seized at point (i) because there was no show of authority or use of force by Van Buskirk, at that point, that would cause a reasonable person to conclude that he or she was not free to leave. As stated by the Sixth Circuit:

> [A] consensual encounter becomes a seizure when in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Circumstances indicative of a seizure include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

United States v. Jones, 562 F.3d 768, 772 (6th Cir. 2009) (citations and quotation marks omitted).

Here, there is no evidence that the manner in which Van Buskirk parked his vehicle significantly impacted Defendant's freedom of movement. The record reflects that Van Buskirk pulled his cruiser from a busy main street onto a side street such that Defendant's progress along one possible walking path was temporarily impeded. Importantly, Van Buskirk did not position his vehicle in a manner that would foreclose all movement by Defendant; rather, he positioned his vehicle so as to block only one of Defendant's possible routes. Moreover, given that

Defendant bolted almost immediately from the scene, it cannot be said that he submitted to the officer in any fashion, even if Van Buskirk's action could be deemed a show of authority.

The Sixth Circuit's decision in Jones supports the conclusion that there was no seizure at point (i). In Jones, the defendant was riding in a vehicle with two other occupants. The vehicle was "hemmed in" by two unmarked police cars, one of which pulled up about two feet in front of the defendant's car, while the other police car pulled up about four or five feet behind the defendant's car. The court held that the defendant's co-occupants were seized when the vehicle was "hemmed in" by the police, blocking their movement. The court, however, found that the defendant was not seized at that time, because he – unlike the occupants who submitted to the police by remaining in the car – exited the vehicle and appeared ready to flee. Only when he submitted to the police command to stop was he deemed seized. Id. at 774. See also Johnson, 620 F.3d at 690-691 (defendant seized for Fourth Amendment purposes when two police officers approached him, announced themselves as police officers several times, yelled in the direction of the defendant "stop" and "stay right there," and defendant complied). Here, Defendant was never "hemmed in" by Van Buskirk's cruiser, nor did he submit in any fashion.

Defendant also was not seized at point (iii) of the chronology above, when Van Buskirk ordered Defendant to place his hands on the hood of the police car. Van Buskirk's uncontroverted testimony reflects that Defendant fled right after the command was given. Hr'g Tr. at 39 ("Q: And after you told . . . Mr. Brown to put his hands on the hood of the vehicle, that's when he took off?  A: Yes."). Because there is no evidence of any submission after Van Buskirk ordered Defendant to place his hands on the hood of the police car, the command did not trigger a seizure under the Fourth Amendment. See Brendlin, 551 U.S. at 254; see also United States v. Thomas, 77 F. App'x 862 (6th Cir. 2003) (officer stepping in suspect's path and

5

ordering him to stop does not constitute Fourth Amendment seizure until suspect actually stops); United States v. Williams, 949 F.2d 220, 222 (6th Cir. 1991) (officer yelling "halt" does not constitute Fourth Amendment seizure until suspect actually stops).[2]

Finally, Defendant was not yet seized at point (vi) in the above chronology, when he was tackled twice by Van Buskirk, as both tackles were unsuccessful in ultimately subduing Defendant. See Brooks v. Gaenzle, 614 F.3d 1213, 1221 (10th Cir. 2010) (in flight cases, "physical touch (or force) must terminate the suspect's movement" for a seizure to occur); Hernandez, 27 F.3d at 1406-07 (no seizure occurred when officer grabbed suspect, a struggle ensued, and suspect fled, as suspect "was not seized because he never submitted to authority, nor was he physically subdued"; "[a] seizure does not occur if an officer applies physical force in an attempt to detain a suspect but such force is ineffective").

For the reasons stated above, the theory on which Defendant's motion to suppress is premised – that Defendant was seized at some point before Van Buskirk saw him with a gun – is without merit. Without a seizure, the police conduct here did not trigger any Fourth Amendment right at the point the gun became apparent to the police. Thus, there is no basis to suppress it.

### IV. CONCLUSION

For the reasons stated, Defendant's motion to suppress (Dkt. 18) is denied.

---

[2] To the extent there was any momentary hesitation by Defendant after he was ordered to put his hands on the hood of Van Buskirk's cruiser, before he took off running, such hesitation would be insufficient to transform the encounter into a Fourth Amendment seizure. See United States v. Hernandez, 27 F.3d 1403, 1405, 1407 (9th Cir. 1994) ("We decline to adopt a rule whereby momentary hesitation and direct eye contact prior to flight constitute submission to a show of authority. Such a rule would encourage suspects to flee after the slightest contact with an officer in order to discard evidence, and yet still maintain Fourth Amendment protections.").

SO ORDERED.

Dated:  February 8, 2013                  s/Mark A. Goldsmith
     Flint, Michigan                       MARK A. GOLDSMITH
                                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 8, 2013.

                                               s/Deborah J. Goltz
                                               DEBORAH J. GOLTZ
                                               Case Manager